# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| KENNETH WAYNE RICE, | ) |
| PLAINTIFF, | ) |
| v. | ) CIVIL ACTION NO.: |
| | )   CV-2014-0318 |
| JP MORGAN CHASE BANK, | ) |
| DEFENDANT. | ) |

## AMENDED COMPLAINT

Comes now, Kenneth Wayne Rice, by and through his attorney of record and files his amended complaint in accordance with the Federal Rules of Civil Procedure as in support of said complaint states as follows:

## PARTIES

1. The Defendant, JP Morgan Chase Bank, in this action is a foreign corporation doing business in Tuscaloosa County, Alabama, is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

2. The Plaintiff, Kenneth Wayne Rice, in this action is an adult resident of Tuscaloosa County, Alabama, and is a "consumer" and/or a person affected by a violation of the FDCPA.

## JURISDICTION

3. Jurisdiction is proper in this Court as there is diversity jurisdiction and the Defendant removed this action from the Circuit Court of

Tuscaloosa Alabama to this Court pursuant to federal law. Moreover, the Plaintiff's amended complaint seeks enforcement and remedies pursuant to federal statutes. The underlying action is based upon a contract executed in Tuscaloosa County, Alabama. The action is brought regarding an attempted foreclosure instituted in Tuscaloosa County, Alabama, and is in the nature of a complaint regarding that attempted foreclosure action. The action is brought to enforce the contractual remedies allowed in the mortgage document. The action seeks damages in contract and tort for the actions of the Chase with respect to their servicing and attempted foreclosure on the loan in question.

## VENUE

4. Venue is proper in this Court as the Plaintiff is a citizen of Tuscaloosa County, all or substantially all of the wrongs complained of occurred in this county, and the property is situated in this county.

## STATEMENT OF FACTS

5. Kenneth Wayne Rice bought the property located at 3813 East 2nd Avenue Tuscaloosa Alabama 35405 on June 13, 2007. On that same date, Rice received a loan with Mortgage America Inc., and executed a mortgage with MERS as nominee for lender Mortgage America Inc., and also signed a promissory note with Mortgage America, Inc. The Mortgage contract provides for an escrow account for the taxes and insurance. The mortgagee is required to pay for the insurance and taxes from the escrow account.

6. Rice currently resides at 3813 East 2nd Avenue, Tuscaloosa Alabama 35405.

7. Cenlar became Servicer of Rice's mortgage loan in 2008. Thereafter, Chase became the servicer of the loan on or about September 3, 2010.

8. On April 8, 2008, Rice filed a chapter 13 bankruptcy petition in the U. S. Bankruptcy Court of the Northern District of Alabama. His chapter 13 bankruptcy plan was later confirmed on June 23, 2008. Cenlar filed a proof claim with the court and was paid pursuant to the

confirmed chapter 13 plan. While the Bankruptcy was pending Chase took over as servicer of this loan. At the time Chase assumed duties as servicer of the loan, the mortgage was in default status as noted in the Bankruptcy petition. Both Cenlar and Chase received payments from the chapter 13 trustee per the confirmed plan.

9. On August 9, 2011, after making all the payment due under the plan, Rice received a chapter 13 discharge from the Bankruptcy Court.

10. The following month, on September 29, 2011, Chase Bank sent Rice a notice of default which alleged that he was in default for mortgage payments for which Chase was paid by the Bankruptcy Trustee and for which the Bankruptcy court had granted a discharge.

11. Despite Mr. Rice continuing to make monthly payments in August 2011, September 2011, and October 2011, Chase sent default notices to Rice. At the time Chase sent said default notices, Rice was not in default and was completely current on his mortgage account.

12. In November 2011, Rice sent a monthly payment to Chase; however, Chase refused the payment and returned it to Rice without explanation. After, Rice called and inquired as to the returned payment, Chase advised Rice that he was in default for failure to make payments, but could not explain why he was allegedly in default. Moreover, Chase advised Rice that it would no longer accept payments from him and that Chase would be turning over his account for foreclosure.

13. Thereafter, Rice continued to make payments each and every month. Chase sent some of those payments back to Rice, it accepted some of those payments but never cashed them, it accepted and cashed some of the payments and applied them to his account, and some of the payments were accepted and cashed but not applied to the loan account. From December 2011until March 2012, Chase refused to take payments from Rice and returned the monthly payments to him. From April 2012 to September 2012 Chase accepted and cashed Rice's monthly payments, but failed to properly apply them to his account pursuant to paragraph 2 of the mortgage contract. From October 2012 until January 2014, Chase returned payments to Rice again also in violation of the mortgage contract.

14. Specifically, the July 2011, May 2012, August 2012, and September 2012 payments, as well as others, were cashed by Chase but not applied at all to Rice's account.

15. On January 8, 2013, Chase improperly and wrongfully began foreclosure proceedings on Rice's property.

16. The Law firm of Stephens Millirons, P.C. handled the attempted foreclosure sale.

17. The Defendant purportedly began foreclosure proceedings on Plaintiff's property on January 8, 2013 despite knowing that the Plaintiff, Rice, claimed that the attempted foreclosure sale was wrongful and invalid, and that he was not in default as his account was current at the time of the acceleration.

18. The foreclosure sale date which included false information related to the alleged default on the indebtedness was published in the newspaper, The Northport Gazette, in December 2012, January 2013, February, 2013, March 2013, April 2013, May 2013, June 2013, July 2013, September 2013, October 2013, and November 2013. Furthermore, said false and inaccurate information related to Rice's alleged default was reported to the national credit bureaus and Rice's credit and reputation were damaged as a result of the reporting of the foreclosure sale date and default which was invalid and wrongful.

19. Rice, upon information and belief, contends that the alleged Assignment of the note and mortgage is defective, void, or otherwise unenforceable as to the security instrument in question in this case.

20. Rice contends that the attempted sale was wrongful, illegal, in violation of law and the documents governing the relationship between Rice and the owners of the note and mortgage.  Furthermore, Rice alleges that he was not behind in his payments on the mortgage and that he was improperly defaulted and that the note was improperly accelerated.

21. Rice contends that the foreclosing entity lacked standing or authority to initiate foreclosure proceedings on his property.

22. Rice alleges that the actions of the Chase and its agents, employees and servants were wrongful and tortious.

23. Rice alleges that the actions of Chase by improperly attempting foreclosure on his property is a violation of law, wrongful and tortious and that the Defendant had no authority to foreclose on his home or property, and that its actions constitute negligence, wantonness, abuse of process and slander of title.

24. As a direct result of the acts complained of Rice has suffered great mental anguish, damage to his reputation, economic and emotional damages and claims from Chase all damages allowable under the law.

## **COUNT ONE**
## **NEGLIGENCE**
### **(Chase)**

25. The Plaintiff re-alleges all prior paragraphs as if set out here in full.

26. Defendant negligently serviced the loan made the basis of this suit, negligently attempted to collect sums not owed by the Plaintiff, negligently caused his property insurance to be canceled, negligently defaulted the Plaintiff, negligently attempted a foreclosure sale on Plaintiff's property, were negligent by failing to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy; negligent by failing to properly train their employees on the thorough investigation of disputed accounts; negligent by failing to properly train, and/or supervise their employees and agents with regard to the handling of Plaintiff's loan account and failing to remove the adverse reporting from Plaintiff's credit once he disputed the same.

27. As a direct result of the said negligence, the Plaintiff was injured and damaged as alleged above and has suffered mental anguish, economic injury and all other damages allowed by law.

28. As a result thereof, the Defendant is liable for all natural, proximate and consequential damages due to their negligence.

## COUNT TWO
## WANTONNESS
## (Chase)

29. The Plaintiff re-alleges all prior paragraphs as if set out here in full.

30. The Defendant acted with reckless indifference to the consequences, and consciously and intentionally wrongfully serviced the loan made the basis of this suit, attempted to collect sums not owed by the Plaintiff, caused his property insurance to be canceled, defaulted the Defendant, attempted to conduct a foreclosure sale on Plaintiff' property, failed to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy; failed to properly train their employees on the thorough investigation of disputed accounts; failed to properly train, and/or supervise their employees and agents with regard to the handling of Rice's loan account and failing to remove the adverse reporting from Rice's credit once he disputed the same.

31. These actions were taken with reckless indifference to the consequences, consciously and intentionally in an effort to increase profits for the Defendant.

32. The Defendant knew that these actions were likely to result in injury to the Plaintiff including financial and emotional injuries and mental anguish.

33. As a proximate result of the Defendant's wantonness the Plaintiff was injured and harmed and suffered financial injury and emotional damage.

34. As a result thereof, Defendant is liable for all natural, proximate and consequential damages due to its wantonness as well as punitive damages upon a proper evidentiary showing.

6

## COUNT THREE
## UNJUST ENRICHMENT
### (Chase)

35. The Plaintiff adopts and re-alleges all prior paragraphs as if set out here in full.

36. The actions of the Defendant in attempting foreclosure on the home of the Plaintiff in violation of law resulted in Defendant being unjustly enriched by the payment of fees, insurance proceeds and equity in the home.

37. As a result of the Defendant's unjust enrichment, the Plaintiff has been injured and damaged in that the Plaintiff has been forced to pay charges that were illegal, wrong in character, wrong in amount, unauthorized, or otherwise improper under threat of foreclosure by the Defendant.

38. The Plaintiff claim all damages allowable under law as a result of the Defendant's wrongful conduct and unjust enrichment.

## COUNT FOUR
## WRONGFUL FORECLOSURE
### (Chase)

39. The Plaintiff re-alleges all prior paragraphs as if set out here in full.

40. Defendant wrongfully initiated and attempted to conduct a foreclosure proceeding against the Plaintiff in violation of law.

41. The attempted foreclosure proceeding by the Defendant was either negligent, wanton or intentional, depending on proof adduced at Trial. The power of sale was exercised for a purpose other than to secure the debt owed by plaintiff, as the plaintiff was current on the debt at the time of the default and acceleration.

42. As a result thereof, the Defendant is liable for all natural, proximate and consequential damages due to their actions including an award of punitive damages upon a proper evidentiary showing.

### COUNT FIVE
### SLANDER OF TITLE
### (Chase)

43. The Plaintiff re-alleges all paragraphs as if set out here in full.

44. Defendant, in attempting foreclosure has caused a cloud to be placed on the title of the property of the Plaintiff.

45. As the proximate cause of the Defendant's said slandering of the Plaintiff's title, he was caused to suffer injuries and damages and claims all damages allowable under law.

### COUNT SIX
### BREACH OF CONTRACT
### (Chase)

46. The Plaintiff adopts and re-alleges all prior paragraphs as if set out here in full.

47. The Plaintiff and his Lender entered into the standard Fannie Mae/Freddie Mac Uniform Instrument" mortgage agreement.

48. The Defendants serviced the loan and breached the agreement by failing to comply with essential terms in paragraph 2 regarding the application of payment and the notice requirements of paragraph 22 of the agreement.

49. As a result of the defendant's breach of the mortgage contract, the Plaintiff was caused to suffer injuries and damages and claims all damages allowable under law.

50. That paragraph 2 of the terms of the agreement entered into between Plaintiff and Mortgage America, Inc. detail the application of payments. That, as more fully described above, Chase failed to apply regular monthly payments, supplemental monthly payments, in the proper manner according to the terms of the note and mortgage.

More specifically, Chase never applied some payments at all to Rice's account even though Rice sent in the payment and it was deposited by Chase. Apparently, Chase has misplaced or is unable to account for the funds from payments made or sent by Rice. Moreover, numerous other payments made by Rice were returned to him by Chase without reason or without explanation. More specifically, for example, in November 2013, Rice's payment was returned to him.

51. That this misapplication of funds constitutes a breach of the mortgage contract and thus entitles Rice to damages.

52. In addition, Chase failed to send proper notices to Rice as required by the mortgage contract. Even if Rice is in default, Chase failed to send a proper notice of default, a proper notice of intent to accelerate, and a proper notice of acceleration. The contract terms related to notice are as follows:

> Lender shall give notice to Borrower **prior to acceleration** following Borrower's breach of any covenant or agreement in this Security Instrument . . . The notice shall specify (a) the default; (b) the action required to cure the default; (c) a date not less than 30 days from the date the notice is given to Borrower by which the default must be cured; and (d); that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform the Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument….

Accordingly, Chase failed to comply with this provision of the mortgage contract and has therefore breached the contract.

53. Moreover, Paragraph 22 of the mortgage document gives the Plaintiff the right to bring an action to dispute the existence of a default and raise defenses thereto. Accordingly, the Plaintiff exercises his right pursuant to paragraph 22 of the mortgage document and hereby challenges the existence of a default on his mortgage indebtedness. As previously, discussed, the Plaintiff is not in default, has made

9

payments every month as required by the mortgage and note and is not behind on his mortgage payments.

## COUNT SEVEN
## FRAUD
## (Chase)

54. The Plaintiff adopts and re-alleges all prior paragraphs as if set out here in full.

55. The Defendant misrepresented that the loan was in default. Further, the Defendant made false and misleading representations, to wit: dissemination of inaccurate information regarding the loan account as being in default and dissemination of inaccurate information regarding the credit history and credit of the Plaintiff that was known to be false.

56. Said misrepresentations were made negligently and/or willfully and/or wantonly and/or fraudulently, and/or recklessly with the intent to induce the Plaintiff to act thereon and upon which the Plaintiffs did in fact act to his detriment.

57. Plaintiff justifiably relied upon said representations made by Defendant and as a result of said reliance proceeded with the execution of the loan; at the time said representations were made the same were false and known by the Defendant to be false and/or were false and made by mistake with the intent for Plaintiff to rely thereon.

58. As a proximate cause of the aforementioned fraudulent misrepresentations made by the Defendant, Plaintiff was proximately caused to suffer injury and damage.

## COUNT EIGHT
## PLACED IN A FALSE LIGHT
## (Chase)

59. Plaintiff adopts the above paragraphs as if fully set forth herein.

60. In association with the servicing of the loan account Chase held Rice up in a false light and made undesirable and negative character and credit reputation remarks on or about the Rice by either speaking or writing undesirable and negative character and reputation remarks about Rice which was offensive, untrue, and inaccurate, and which alleged Rice was behind on his debt serviced by Chase, has a bad debt with Chase.

61. Chase knew Rice was not in default on the account, as it was paid to date and as such, that there existed no basis in law or fact, for the Chase to make offensive, untrue, and inaccurate reports regarding Rice. Chase knew this at the times they were reporting such information.

62. Chase held Rice up in a false light and made undesirable and negative and credit reputation remarks on or about Rice in the national credit reporting media and to his homeowner insurance carrier. Chase provided this false information to third parties.

63. The conduct Chase was objectionable to the Rice and to any reasonable person. Chase's action was willful, reckless, wanton and/or made with malice and resulted in Rice being unreasonably placed in a false light.

64. Due to Chase's conduct, Rice was caused to have negative credit reports, denied homeowners insurance, held up to public ridicule or shame, humiliated, made to suffer physically and mentally, and endure anguish.

    WHEREFORE, PREMISES CONSIDERED, Rice Prays for Judgment against Chase in an amount to be determined by trier of fact.

## COUNT NINE

### DEFAMATION, LIBEL, SLANDER
### (Chase)

65. Plaintiff adopts the above paragraphs as if fully set forth herein.

11

66. The Defendant willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding the Plaintiff and said statements have subjected the Plaintiff to the denial of credit by third parties, resulted in homeowner's insurance cancellation and harmed the Plaintiff's credit reputation. As previously stated, the Plaintiff was current on his mortgage account and has made payments each and every month. Accordingly, he was not in default. Despite Rice's account being current, Chase published in the newspaper false information regarding his account being in default and false information regarding its right to conduct a foreclosure sale on Rice's property.

67. Said false and defamatory statements have harmed the reputation of Rice and/or deterred third persons from associating with the Rice.

68. The Defendant communicated to credit reporting agencies and/or other third parties, false information that Rice defaulted on the loan and was in foreclosure, disseminated and imputed false and misleading credit history and worthiness information concerning Rice.

69. Chase published such defamatory and libelous information in the Northport Gazette newspaper.

70. Said communications were false in that Plaintiff was not indebted to the Defendant in the amount reported, and Plaintiff was not delinquent as reported by the Defendant, and Plaintiff is the legal and rightful owner of the mortgage note.

71. At the time said communications were made, Chase knew, or should have known, of the falsity of the communication or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully, and maliciously communicated the falsity.

72. As a result of the intentional communication to third parties of false information, Rice was caused to suffer injury to his reputation in the eyes of the community and the public and was subject to ridicule.

73. Said communications were oral and/or written.

74. As a proximate consequence of Chase's acts, Rice was caused to be injured and damaged.

75. Chase published such defamatory and libelous information. Chase knew Rice was not in default on the account, as it was paid to date and as such, that there existed no basis in law or fact, for the Chase to make offensive, untrue, and inaccurate reports regarding Rice. Chase knew this at the times they were reporting such information. Furthermore, Chase published in the local newspaper in Tuscaloosa County Alabama the false information of the default on the loan in the foreclosure sale notice. This foreclosure sale notice states that Rice's loan is in default and in foreclosure. Chase knew this information was inaccurate at the time it published this notice in the local paper, and the published false information harmed Rice's reputation and character. As a result, Rice suffered damages of his reputation which negatively affected his credit and his business causing monetary losses.

76. Said communications were false in that Plaintiff were not indebted to the Defendant in the amount reported, Plaintiff was not delinquent as reported by the Defendant, and Defendant is not the legal and rightful owner of the mortgage note.

77. At the time said communications were made, Chase knew, or should have known, of the falsity of the communication or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully, and maliciously communicated the falsity.

78. As a result of the intentional communication to third parties of false information, Rice was caused to suffer injury to his reputation in the eyes of the community.

## COUNT TEN:
## VIOLATIONS OF TRUTH IN LENDING

79. Rice re-alleges and adopts the above paragraphs as if fully set forth herein and also asserts the following:

80. Chase violated the Federal Truth in Lending Act.

81. Rice institutes this action for actual damages, statutory damages, attorney's fees, and the costs of this action against Chase for multiple violations of the Truth in Lending Act, 15 U.S.C. §1601et seq. , (hereinafter TILA),and Federal Reserve Board Regulation Z, 12 C.F.R. § 226,promulgated pursuant thereto.

82. This complaint is solely for monetary damages pursuant to15 U.S.C. § 1640. Under 15 U.S.C. § 1640(a), it is not necessary to allege or to prove actual damages to recover statutory damages.

83. Chase, is a covered by the Act as it regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making defendant a creditor within the meaning of TIL, 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a)(17).

84. Chase did not provide a proper copy of the notices required by the Act to Rice.   The disclosure statement issued in conjunction with this consumer credit transaction violated the requirements of Truth in Lending and Regulation Z     in the following and other respects:  (a). By failing to provide   the required disclosures prior to consummation of the transaction in violation of 15 U.S.C.§ 1638(b) and Regulation Z § 226.17(b).  (b). By failing to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a)and Regulation Z § 226.17(a).  (c). By failing to include in the finance charge certain charges imposed by defendant payable by plaintiff incident to the extension of credit as required by 15 U.S.C. § 1605and Regulation Z § 226.4, thus improperly disclosing the finance charge in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z § 226.18(d). Such amounts include, but are not limited to the attorney fees and late fees, 15 U.S.C. § 1605(a), Regulation Z§ 226.4(a).

85. The regulations require that the notice shall identify the transaction or occurrence and clearly and conspicuously disclose the following: The retention or acquisition of a security interest in the consumer's

principal dwelling. The consumer's right to rescind, as described in paragraph (a)(1) of this section. How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.  The effects of rescission, as described in paragraph (d) of this section.  The date the rescission period expires. (See Reg. Z §§ 226.15(b)(5) and 226.23(b).

86. By charging "attorney fees" and other "fees" not authorized by the mortgage contract, Chase has made unauthorized charges and failed to disclose these charges in violation of the Act.  In this case, Chase added fees to Rice's account in September 2011 which are referenced in the notice of default.  Moreover, once the account was turned over to the attorney for foreclosure in January 2013, additional fees were improperly added to the account.  Each time the sale was published in the newspaper up to and including December 2013, Chase added additional and unauthorized fees to Rice's account balance.

87. By calculating the annual percentage rate (APR) based upon improperly calculated and disclosed finance charges and amount financed, 15 U.S.C. § 1606, Regulation Z§ 226.22, Chase understated the disclosed annual percentage rate in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z § 226.18(c).

88. That Chase has been improperly amortizing the loan, and has failed to provide proper disclosures to Rice. Chase failed to send proper monthly statements to Rice in violation of the Act.

89. By reason of the aforesaid violations of the Act and Regulation Z, Chase is liable to Rice in the amount of twice the finance charge, actual damages to be established at trial, and attorney's fees and costs in accordance with 15U.S.C. § 1640 for violations of Federal Truth in Lending Act.

## COUNT ELEVEN: VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)

90.   Rice re-alleges and adopts the above paragraphs as if fully set forth herein and also asserts the following:

91. Chase violated the Real Estate Settlement Procedures Act (REPA) by failing to acknowledge or respond to Rice's Qualified Written Request(QWR).  Defendant violated the Real Estate Settlement Procedures Act (REPA) by failing to acknowledge or respond to Rice's Qualified Written Request (QWR) within in the time provided by federal law.

92. Rice made a Qualified Written Request pursuant to RESPA to Chase on January 4, 2013, February 25, 2013, May 8, 2013, and August 4, 2013, November 28, 2012 which was sent by certified mail.  It was signed for by Chase acknowledging receipt of the QWR.  Chase never acknowledged receipt of the QWR request and never responded to it.  Chase's failure to acknowledge and respond to the QWR request is a violation of  RESPA or the Dodd-Frank Act.  Because of said violations of said acts, Rice was damaged because he was not informed of the information regarding his loan.  Because the bank failed to give this information to Rice, he was not able to stop the foreclosure on his home.  Accordingly, Rice is entitled to damages from  Chase.  Plaintiff suffered damages by Chase's failure to comply with the RESPA law because he was unable to get a proper accounting of the fees and charges owed on the account to cure any alleged default and as a result a foreclosure sale was set.

## COUNT TWELVE
## FAIR CREDIT REPORTING ACT

93. Rice re-alleges and adopts the above paragraphs as if fully set forth herein and also asserts the following .

94. Rice disputed the account and false credit reporting.  Chase was inaccurately reporting that Rice was delinquent in his mortgage loan and in Default.   Rice repeatedly contacted Chase from September 2011 until January 8, 2014 and informed Chase regarding ITS INACCURATE REPORTING.  Moreover, Rice contacted the credit national bureaus and informed them of the inaccurate information and disputed same.  Nonetheless the credit reports were never changed because Chase kept reporting the account as delinquent and in foreclosure.

95. Despite receipt of the dispute, defendants failed to properly investigate and respond, failed to make any effort to verify the complaints of plaintiff and reported the false, derogatory information to the consumer reporting agencies in violation of their duties as a furnisher of credit.

96. According to the national consumer reporting agencies' reports the defendants falsely reported about plaintiff's disputed debt.

97. Defendants likewise willfully, or alternatively, negligently, violated the Fair Credit Reporting Act by failing to properly conduct a reasonable   investigation and by failing to supply accurate and truthful information.

98. Rather, defendants reported false and inaccurate information and failed to retract, delete and suppress false and inaccurate information it reported about the plaintiff.

99. Defendants failed to conduct a reasonable investigation with respect to consumer credit data it reported about the plaintiff.

100. Defendants failed to review all relevant and pertinent information provided to it regarding the debt.

101. As a proximate result of the Defendants' fraudulent conduct the Plaintiff has been injured and damaged.

102. Defendants' violations and false credit reportings about plaintiff have been a substantial factor in causing credit denials and other damages.

103. Defendants are liable unto plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims   asserted herein including, but not limited to, out-of-pocket expenses, credit   denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of   incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorneys' fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws,

together with legal interest thereon from date of judicial demand until paid.

104. WHEREFORE PLAINTIFF, PRAYS that after all due proceedings be had there be judgment herein in favor of Plaintiff and against Defendants. 1) That there be Judgment in favor of Plaintiff and against Defendants, for all reasonable damages sustained by Plaintiff including but not limited to actual damages, statutory damages, compensatory damages, out-of-pocket expenses, credit denials, adverse action, lost credit opportunities, costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and for punitive/exemplary damages, attorneys' fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid; and 2) That this Honorable Court order Defendants to reinvestigate and correct the credit report(s), data emanations, and credit histories of and concerning Plaintiff or any of plaintiff's personal identifiers.

## COUNT THIRTEEN

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 et seq.

105. Rice re- incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

106. The acts and omissions of counter-defendant as more specifically stated in the facts constitutes numerous and multiple violations of the FDCPA including, but not limited to, §1692e(2), §1692e(8), and §1692f(1), with respect to Rice. As a result of counter Defendants' violations of the FDCPA, the Rice are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15U.S.C. § 1692k(a)(3), from defendants. Chase is subject to the act because as previously stated, it began servicing this loan while the Defendant was in a chapter 13 Bankruptcy.

107. Within the last 12 months, Chase attempted to collect amounts not owed under the mortgage contract. Within the last 12months, Chase sought unjustified amounts, which would include demanding any amounts not permitted under an applicable contract or as provided under applicable law in violation of the Act §1692f(1). Within the last 12 months, Chase threatened legal action that was either not permitted or not actually contemplated in violation of the Act §1692 e. Within the last 12 months, Chase communicated with third parties: revealing or discussing the nature of debts with third parties in violation of the Act §1692 c. Chase within the last 12 months, failed to identify themselves and notify the Rice in every communication, that the communication was from a debt collector in violation of the Act §1692e(11). Within the last 12 months Chase falsely stated the amount of the debt owed in violation of §1692e2a.

## COUNT FOURTEEN: CLAIM FOR DECLARATORY RELIEF

108. Rice re-alleges and adopts the above paragraphs as if fully set forth herein and also asserts the following:

109. Chase breached the contract with Rice by failing to follow the terms for notice requirements agreed to in the mortgage contract as well as payment application. Chase never sent Rice the required notices and failed to properly apply his payments. As a result Rice is entitled to the following declaratory relief: (1) An Order declaring that he is not in default of his mortgage agreement and declaring the notice of default is null and void. (2) An order declaring that Chase has no right or authority to foreclose on Rice's property. (3) An Order prohibiting Chase from foreclosing on Rice's property.

**PLAINTIFF ( RICE) DEMANDS A TRIAL BY JURY.**

**WHEREFORE,** the Plaintiff having set forth his claims for relief against the Defendant (Chase), he respectfully prays of the Court as follows:

    a.    That the Plaintiff have and recover against the Chase, a sum to be determined by this Court peers in the form of actual damages.

    b.    That the Plaintiff have and recover against the Defendant Chase a sum to be determined by this Court in the form of compensatory and punitive damages.

    c.    That Plaintiff, Rice, be awarded attorney fees and court cost.

    d.    That the Plaintiff have such other and further and proper relief as the Court may deem just and proper:

>/s/ Kenneth James Lay
>HOOD & LAY, LLC
>1117 22nd Street South
>Birmingham, Alabama 35205
>Tel: (205) 323-4123
>Fax:(205) 776-2040
>Attorney for Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that on this the 14th day of April 2014, a copy of the forgoing amended complaint has been served upon counsel for all parties to this proceeding by U.S. Mail, postage prepaid.

Jeffrey P. Doss, Esq.
LIGHTFOOT, FRANKLIN & WHITE LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203

>/s/ Kenneth J Lay
>Kenneth Lay