

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

KENNETH WAYNE RICE,           )
                              )
        Plaintiff;            )
                              )
   vs.                        )               7:14-cv-00318-LSC
                              )
JPMORGAN CHASE BANK NA,        )
                              )
        Defendant.            )

## MEMORANDUM OF OPINION

Plaintiff Kenneth Wayne Rice ("Rice") brought this action against Defendant JP Morgan Chase Bank NA ("Chase"), alleging a variety of federal and state law claims surrounding a purported breach of a mortgage agreement. Chase has moved to dismiss some of the claims against it (Doc. 18), and for the reasons discussed below the motion is due to be granted.

## I.   BACKGROUND[1]

_____

[1] For purposes of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court treats the facts alleged in the complaint as true and construes them in Rice's favor. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012). Chase contends that the Court should also consider the content of various documents related to the mortgage, and it attached a copy of these documents to its motion to dismiss. *See Fuller v. SunTrust Banks, Inc.*, 744 F.3d 685, 696 (11th Cir. 2014) (indicating that the Court may consider documents attached to a motion to dismiss if (1) the plaintiff references the document in the complaint; (2) the document is central to the claim; (3) the document's contents are not in dispute; and (4) the

Rice purchased a home in Tuscaloosa, Alabama, on June 13, 2007. In order to complete the sale, he obtained a loan from Mortgage America Inc. ("Mortgage America"). Upon receiving the loan, Rice also executed a mortgage with Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee for Mortgage America and signed a promissory note with Mortgage America. The underlying contract provides for an escrow account for taxes and insurance, and the mortgagee is required to pay these expenses from the account. At some point in 2008, a company called Cenlar became the servicer of Rice's mortgage loan.

On April 8, 2008, Rice filed a petition for chapter 13 bankruptcy in the U.S. Bankruptcy Court for the Northern District of Alabama (the "Bankruptcy Court"). The Bankruptcy Court confirmed Rice's bankruptcy plan on June 23, 2008. According to the complaint, Rice made all required payments under the bankruptcy plan and was granted a discharge by the Bankruptcy Court on August 9, 2011.

During his bankruptcy, Rice claims that Cenlar received payments pursuant to the bankruptcy plan after filing a proof of claim with the Bankruptcy Court. In addition, the complaint alleges that Chase became servicer of the loan around

---

defendant attaches the document to its motion). As the Court explains below, it need not consider these documents in ruling on Chase's motion. Thus, the Court renders its decisions based solely on consideration of the allegations in the Plaintiff's complaint.

September 3, 2010. At that time, the mortgage was in default status, but Rice indicates that Chase also received payments in accordance with the bankruptcy plan.[2]

After Rice emerged from bankruptcy, he claims that he soon began to encounter problems with Chase. Chase apparently sent Rice a notice of default on September 29, 2011, seeking payments that Rice contends were made by the bankruptcy trustee and discharged by the Bankruptcy Court. Even though Rice's complaint asserts that he was "completely current" on his mortgage account and that he continued to make his monthly payments, Chase sent him additional default notices for several months.

In November 2011, Rice sent Chase a monthly payment, but it refused this payment and returned it to Rice. When Rice called to ask why the payment was returned, Chase indicated that it would no longer accept payments from him and that it was turning over his account for foreclosure. However, Rice claims that he continued to send monthly payments to Chase, but Chase mishandled these payments. Chase allegedly returned some of the payments to Rice, accepted other payments but never cashed them, and cashed some of the payments without properly applying them to Rice's mortgage account. Rice indicates that this conduct occurred from December

---

[2] Rice pleads only that Chase is the "servicer" of Rice's loan. He did not plead any facts to suggest which financial institutions actually owned the loan during this period. The Court notes that Chase, in its motion to dismiss, indicated that Chase was assigned the loan from MERS on March 15, 2012, but Rice urged the Court not to consider these documents attached to the motion. (Doc. 21 at 2 n.1.)

2011 until January 2014.

Over a year after this conduct began, Chase purportedly initiated foreclosure proceedings on Rice's home on January 8, 2013. It apparently hired the law firm of Stephens Millirons, P.C., to handle the sale. As part of the proceedings, Rice alleges that false information regarding his debt was published in *The Northport Gazette* from December 2012 until November 2013. Additionally, Rice indicates that "false and inaccurate information related to Rice's alleged default was reported to the national credit bureaus." (Doc. 14 at 4 ¶ 18.)

Rice filed suit over these actions in the circuit court of Tuscaloosa County, Alabama, on January 20, 2014. Chase removed the case to this Court on February 21, 2014, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1.) Upon removal Chase moved to dismiss the complaint, and Rice countered by moving for leave to file an amended complaint. The Court granted leave to amend, and Rice's amended complaint includes a number of federal and state law claims. (Doc. 14.) Specifically, he brought federal claims under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1640, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*

Additionally, Rice asserts state law tort claims based on negligence, wantonness, wrongful foreclosure, slander of title, fraud, false light, defamation, libel, and slander, along with state law breach of contract and unjust enrichment claims. Finally, Rice also seeks declaratory relief. Chase has moved to dismiss the TILA and FCRA claims along with all the state law tort claims and the unjust enrichment claim.

## II.   STANDARD OF REVIEW

Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S. Ct. 1937, 1950 (2009). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id*. at 678, 129 S. Ct. at 1949 (internal quotations omitted). *Iqbal* establishes a two-step process for evaluating a complaint.  First, the Court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679, 129 S. Ct. at 1950. Second, "[w]hen there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Factual allegations in a complaint need not be detailed, but they "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007).

Additionally, Rice has pleaded fraud claims that are subject to the heightened pleading standard of Rule 9 of the Federal Rules of Civil Procedure ("Rule 9"). Rule 9 requires:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). This rule "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179 (1985)). In order to satisfy Rule 9, the complaint usually must allege "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *United States ex rel.*

*Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) (internal

quotation marks omitted).

## III.   DISCUSSION

### A.   Federal Claims

#### i.   TILA

According to Rice, Chase violated TILA and Regulation Z[3] by failing to provide

him with appropriate disclosure statements. More specifically, Chase allegedly failed

to provide adequate disclosures "prior to consummation of the transaction," failed

to make disclosures clearly and in writing, failed to notify Rice of various finance

charges, and failed to disclose possible attorney fees and late fees. (Doc. 14 at 14 ¶ 84.)

Rice further complains that Chase improperly calculated an annual percentage rate

("APR"). Finally, he unambiguously indicates that "[t]his complaint is *solely* for

monetary damages pursuant to 15 U.S.C. § 1640." (*Id*. at 14 ¶ 82 (emphasis added).)

TILA is a remedial consumer protection statute designed to increase

---

[3] Regulation Z, 12 C.F.R. §§ 226.1 *et seq*, consists of various rules promulgated by the Federal Reserve Board to further the purposes of TILA. *Hendley v. Cameron-Brown Co.*, 840 F.2d 831, 833 (11th Cir. 1988). Under his TILA claim, Rice also points to various provisions of Regulation Z. To the extent that a private right of action applies to Regulation Z actions, it would also be cognizable under the private right of action in TILA. Given that Rice has solely alleged a claim under 15 U.S.C. § 1640, the Court evaluates both the Regulation Z and TILA claims under this statute. *See Runkle v. Fed. Nat'l Mortg. Ass'n*, 905 F. Supp. 2d 1326, 1331 (S.D. Fla. 2012) (vacated in part by *Runkle v. Fed. Nat'l Mortg. Ass'n*, No. 12-61247-CIV, 2012 WL 6554755).

competition among financial institutions and promote the flow of credit-related information to the consumer. *See Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1065 (11th Cir. 2004) (quoting 15 U.S.C. § 1601(a)). Like other remedial statutes, "TILA must be construed liberally in favor of the consumer." *Id.* Under TILA, a consumer has a private right of action against "any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, subsection (f) or (g) of section 1641 of this title, or part D or E of this subchapter." 15 U.S.C. § 1640(a) ("§ 1640").

Notably, this private right of action, by its plain language, applies only to creditors. TILA defines the term "creditor" as follows:

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g). "The definition given in this sentence is restrictive and precise, referring *only* to a person who satisfies *both* requirements." *Cetto v. LaSalle Bank Nat'l Ass'n*, 518 F.3d 263, 270 (4th Cir. 2008) (emphasis in the original). Thus, to state a

claim for relief under § 1640, Rice's pleaded facts must suggest that Chase meets both of these elements. *See Parker v. Potter*, 232 F. App'x 861, 864 (11th Cir. 2007). Chase does not contest that it falls under the first prong of the definition, but it contends that the second prong is not met in this case.

Rice's complaint contains the following allegation regarding Chase's status as a creditor:

> Chase[] is a covered [entity] by the Act as it regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable.

(Doc. 14 at 14 ¶ 83.) This allegation amounts only to a recital of the prongs of the statutory definition and is not entitled to a presumption of truth when ruling on a Rule 12(b)(6) motion to dismiss. *See Franklin v. Curry*, 738 F.3d 1246, 1248 n.1 (11th Cir. 2013). Additionally, Rice's pleaded facts make it clear that Chase is not a creditor. The complaint makes no mention of Chase when the loan was executed in 2007. Instead, it references only Mortgage America, the lender, and MERS, the nominee on the mortgage. According to the complaint, "Chase became the *servicer* of the loan on or about September 3, 2010," over three years after Rice entered the original mortgage arrangement. (Doc. 14 at 2 ¶ 7 (emphasis added).) There are no facts from which the

Court could infer that the transaction was "initially payable" to Chase, and thus Chase is not a creditor for purposes of liability under § 1640.

The Court notes that in certain instances an assignee may be liable under TILA and that Rice has pointed the Court to some cases involving assignees. 15 U.S.C. § 1641. However, there are no facts in the complaint itself to suggest that Chase actually is an assignee or to suggest that Rice is seeking to hold Chase liable as an assignee. The complaint contains a conclusory assertion that an assignment of the note is invalid, but it does not even allege that the assignment was to Chase. Although Chase indicated in its motion to dismiss that the loan was assigned to Chase on March 15, 2012, and it attached a copy of the assignment, Rice asked the Court to ignore these attachments and facts in the motion to dismiss. (Doc. 21 at 2 n.1.) Thus, he has abandoned any argument that Chase is the assignee. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("[F]ailure to brief and argue [an] issue during the proceedings before the district court is grounds for finding that the issue has been abandoned.").

Additionally, it is clear from the complaint that the alleged disclosure violations relate to disclosures that should have been made by the creditor at the beginning of the transaction. In such cases, an assignee is only liable if the error "is apparent on the

face of the disclosure statement, except where the assignment was involuntary." 15 U.S.C. § 1641(a). There are no facts to plausibly suggest that these terms are satisfied. Although in some cases an assignee might also be liable for disclosures that occur by definition after the original transaction, Rice has not pleaded such facts. *See Lucien v. Fed. Nat'l Mortg. Ass'n*, - - - F. Supp. 2d - - - -, 2014 WL 2184934, at \*7–\*8 (S.D. Fla. May 23, 2014). Thus, the motion to dismiss the TILA claims is due to be granted.

### ii.   FCRA

Next, Rice seeks to hold Chase liable as a "furnisher" of credit information under the FCRA. According to the complaint, Chase both provided inaccurate information to credit agencies and failed to investigate his disputes regarding the purportedly inaccurate information. Chase does not contest that it is a furnisher of credit information.

"[T]he FCRA places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." *Chipka v. Bank of Am.*, 355 F. App'x 380, 382 (11th Cir. 2009). A furnisher may not knowingly provide inaccurate information to credit reporting agencies, and it must conduct an investigation to verify the accuracy of its information when a consumer reporting agency notifies the furnisher of a dispute

regarding the information. 15 U.S.C. § 1681s-2(a) & (b). However, a consumer *only* has a private right of action for violations of 15 U.S.C. § 1681s-2(b) ("§ 1681s-2(b)"). *See Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009) ("[T]he statute explicitly bars private suits for violations of [15 U.S.C. § 1681s-2(a)]."); *see also Green v. RBS Nat'l Bank*, 288 F. App'x 641, 642 (11th Cir. 2008).

From the face of the complaint, it appears that Rice may have attempted to allege a claim under 15 U.S.C. § 1681s-2(a) ("§ 1681s-2(a)"). For example, he pleaded that "[D]efendant[] failed to properly investigate and respond, failed to make any effort to verify the complaints of plaintiff and *reported the false, derogatory information to the consumer reporting agencies in violation of their duties as a furnisher of credit.*" (Doc. 14 at 17 ¶ 95 (emphasis added).) Insofar as Rice attempted to plead a private right of action based on a violation of 15 U.S.C. § 1681s-2(a), such claim is due to be dismissed.[4]

Similarly, Rice also failed to state a claim for a violation of § 1681s-2(b). A furnisher's duties under § 1681s-2(b) only apply "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or

---

[4] The Court also notes that Rice did not discuss § 1681s-2(a) in his brief but instead argued only that he has stated a claim under the private right of action authorized in § 1681s-2(b). Thus, he has also abandoned any claim under § 1681s-2(a). *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000).

accuracy of any information provided by a person to a consumer reporting agency."
15 U.S.C. § 1681s-2(b)(1). Section 1681i(a)(2) directs a consumer reporting agency to
notify the furnisher of any dispute. *Chipka*, 355 F. App'x at 383 (stating that the
private right of action applies to a furnisher "when notified *by a consumer reporting
agency* of a credit-report dispute" (emphasis added)).

Indeed, Rice conceded that "Chase must perform a reasonable investigation of
a consumer dispute *after receiving notice from a credit bureau, such as Equifax, Experian
or Trans Union*." (Doc. 21 at 40 (emphasis added).) However, Rice pleaded no facts
to suggest that Chase received notice from a *credit agency* regarding any dispute.
Instead, the complaint only states:

> Rice disputed the account and false credit reporting. Chase
> was inaccurately reporting that Rice was delinquent in his
> mortgage loan and in Default. Rice repeatedly contacted
> Chase from September 2011 until January 8, 2014 and
> informed Chase regarding ITS INACCURATE
> REPORTING. Moreover, Rice contacted the credit
> national [sic] bureaus and informed them of the inaccurate
> information and disputed same. Nonetheless the credit
> reports were never changed because Chase kept reporting
> the account as delinquent and in foreclosure.

(Doc. 14 at 16 ¶ 94 (capitalization in original).) According to this pleading, *Rice*
informed both Chase and various credit agencies about a dispute, but he has not
pleaded any facts to suggest that the *credit bureaus* then contacted Chase as required

by the statute. Thus, Rice has pleaded no facts as to an essential element of this claim, and the motion to dismiss is due to be granted. *See GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012) (explaining that to survive a rule 12(b)(6) motion a plaintiff must "include factual allegations for each essential element of his or her claim").

Before proceeding to the state law claims, the Court must also consider whether some of those claims are preempted by the FCRA. The FCRA contains two preemption provisions. The first provision states:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) ("§ 1681h(e)"). Subsequently, Congress enacted an additional preemption provision, which provides in relevant part:

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter

> regulated under . . . section 1681s-2 of this title, relating to
> the responsibilities of persons who furnish information to
> consumer reporting agencies.

15 U.S.C. § 1681t(b)(1)(F) ("§ 1681t(b)(1)(F)"). According to Chase, this latter provision preempts Rice's state law tort claims that are based on information provided to credit reporting agencies.

This Court's "authority to interpret statutory language is constrained by the plain meaning of the statutory language in the context of the entire statute, as assisted by the canons of statutory construction." *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010). As with other statutes, "[i]nterpretation of the statutory language is the key to construing [a statute's] preemptive force." *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 335–36 (5th Cir. 1995) (en banc).

Turning to the statutory text, it is clear that § 1681t(b)(1)(F) broadly preempts those state laws that could be applied to *anything* covered under § 1681s-2. It is also clear that this second preemption provision applies to both common law and statutory causes of action under state law. *Purcell v. Bank of Am.*, 659 F.3d 622, 624 (7th Cir. 2011) (explaining that the term "laws" traditionally refers to both statutory and common law). Additionally, the use of the phrase "no requirement or prohibition" corroborates this reading because that phrase traditionally applies to both statutory

and common law causes of action. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521, 112 S.Ct. 2608, 2620 (1992).

Even so, the Court must attempt to construe the statute in a way that avoids surplusage. *Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 944 (11th Cir. 2001). Here, however, there is no conflict between the two provisions. Section 1681h(e) preempts some state law actions, and § 1681t(b)(1)(F) merely preempts more. It is easily possible to comply with both statutes at the same time, and if Congress repealed § 1681t(b)(1)(F), the preemption provision in § 1681h(e) could remain in effect. *Purcell*, 659 F.3d at 625–26. Thus, there is no conflict between the two statutes.

Using this framework, the Court must now analyze Rice's state law tort claims. The Court considers preemption only as to the false light and defamation, libel, and slander claims.[5] These claims include allegations that Chase reported information to credit agencies that it either knew or should have known was false. The FCRA explicitly prohibits a furnisher of information from reporting information to a consumer reporting agency that it "knows or has reasonable cause to believe . . . is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). Section 1681t(b)(1)(F) preempts *any* state

---

[5] As the Court states below, the negligence and wantonness claims are due to be dismissed for failure to state a claim. Since Rice failed to state a claim based on these theories, the Court does not address preemption as it applies to these causes of action. *See Young v. Equifax Credit Info. Servs.*, 294 F.3d 631, 638 (5th Cir. 2002) (avoiding a preemption issue by concluding that the plaintiff's allegations failed to state a cause of action under state law).

laws that regulation the subject matter of *any part* of § 1681s-2, and that would include portions of § 1681s-2(a). Thus, these claims are due to be dismissed insofar as they seek to hold Chase liable for information that it furnished to credit agencies.[6]

### B.    State Law Claims

#### i.    Tort Claims

First, Rice contends that Chase's actions amount to both negligence and wantonness. "The elements of a negligence claim are a duty, a breach of that duty, causation, and damage." *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 679 (Ala. 2001). Alternatively, wanton conduct requires the Plaintiff to allege facts to suggest that the defendant did "some act . . . with reckless indifference to the consequences of said act, or . . . a failure or omission to do something, with reckless indifference to the consequences of such failure or omission." *Id.* at 679–80 (second ellipse in the original, internal quotation marks omitted).

Here, both the negligence and wantonness claims are buttressed solely by legal conclusions. Rice attempts to allege that Chase failed to properly train its employees on proper investigation methods for disputed accounts and failed to properly train and

---

[6] Chase has not moved for dismissal, and the Court does not address, those portions of these claims that appear to relate to other communications, such as the publication of various notices in *The Northport Gazette.*

supervise its agents regarding the handling of Rice's account. However, these statements by themselves are legal conclusions that are not entitled to any presumption of truth. *See Franklin*, 738 F.3d at 1248 n.1. In the context of a negligent or wanton training or supervision claim, "the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him." *Thompson v. Havard*, 235 So. 2d 853, 858 (Ala. 1970). Rice has neither pleaded any facts regarding how Chase employees either investigated or handled his claims nor pleaded any facts pertaining to the training or supervision that such Chase employees received. There are no facts from which the Court could infer that Rice has a plausible claim that Chase failed to properly train or supervise its employees.

Rice's remaining claims amount to an allegation that Chase negligently or wantonly breached the contract. Under Alabama law, "a mere failure to perform a contractual obligation is not a tort." *Barber v. Bus. Prods. Ctr., Inc.*, 677 So. 2d 223, 228 (Ala. 1996) (overruled on other grounds in *White Sands Grp., LLC v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009). According to the complaint, Chase collected funds that were not owed, caused insurance to be canceled, defaulted Rice, and attempted a foreclosure sale, among other things. While Rice may pursue these claims under a

breach of contract theory, as he has done, his negligence and wantonness claims are due to be dismissed. *See Fassina v. CitiMortgage, Inc.*, No. 2:11-cv-2901-RDP, 2012 WL 2577608, at *6 (N.D. Ala. July 2, 2012) ("Alabama law does not recognize a tort-like cause of action for the breach of a duty created by a contract." (internal quotation marks omitted)).

Second, Rice attempts to state a claim for wrongful foreclosure. "A mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. & Loan. Ass'n*, 607 So. 2d 180, 182 (Ala. 1992). To state a wrongful foreclosure claim, the plaintiff must plead facts suggesting there were as an actual foreclosure sale. *See ECP Financial II LLC v. Ivey*, No. 6:13-cv-00920-LSC, 2013 WL 6330936, at *3 (N.D. Ala. Dec. 5, 2013) ("The plain reading of the terms 'uses the power of sale' in the wrongful foreclosure claim establishes that there must be an actual foreclosure sale."). Here, Rice alleged only that Chase "wrongfully initiated and attempted to conduct a foreclosure proceeding against the Plaintiff in violation of law." (Doc. 14 at 7 ¶ 40.) Indeed, Rice pleaded that he still lives at this residence, and thus there is no basis to infer that Chase has actually used the power of sale against Rice. The wrongful foreclosure claim is due to be

dismissed.

Third, the Court turns to the slander of title claim. A slander of title claim has six elements:

> (1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail).

*Merchs. Nat'l Bank of Mobile v. Steiner*, 404 So. 2d 14, 21 (Ala. 1981) (quoting *Womack v. McDonald*, 121 So. 57, 59 (Ala. 1929)). "To satisfy the special damages pleading requirement, a plaintiff must allege that the defendant's false publication 'interrupted, or injuriously affected, some dealing of the plaintiff with his property' or caused the plaintiff to incur expenses 'to relieve his right to the property from the damnifying effect of such false and malicious slander.'" *Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1244 (N.D. Ala. 2012) (quoting *Ebersole v. Fields*, 62 So. 73, 75 (Ala. 1913)). Typically, special damages pertain to failed transactions or other forms of lost profits relating to the property. *See Norman v. Bozeman*, 605 So. 2d 1210, 1214 (Ala. 1992) (describing various types of losses that might amount to special damages).

Here, Rice only pleaded that Chase's actions clouded his title and that "[a]s the

proximate cause of the Defendant's said slandering of the Plaintiff's title, he was caused to suffer injuries and damages and claims all damages allowable under law." (Doc. 14 at 8 ¶ 45.) This general allegation of damages is insufficient to plead special damages because it neither alleges the *unique* types of damage to someone's use of property that would support a slander of title claim *nor* alleges specific damages that are traceable to the purported slander itself (the publication in the newspaper) as opposed to the other alleged actions in the complaint.[7] *See Ebersole*, 62 So. at 75. Moreover, Rice laid out the elements of a slander of title claim in his brief and addressed several of these elements, but he made *no* response on the issue of special damages even though Chase moved for dismissal on this ground. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (noting that failure to brief an issue is grounds for finding that it has been abandoned). The special damages requirement is an essential element of a slander of title claim, and dismissal is appropriate. *See Prickett*, 946 F. Supp. 2d at 1244.

Finally, Rice seeks to hold Chase liable based on a theory of fraud. The basic elements of an Alabama fraud claim are: "(1) [a] false representation (2) of a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result

---

[7] Rice only alludes to the published notices in *The Northport Gazette* in his brief as the basis for his slander of title claim. (Doc. 21 at 23.)

of the misrepresentation." *Ala. Psychiatric Servs., P.C. v. 412 S. Court St., LLC*, 81 So. 3d 1239, 1247 (Ala. 2011) (internal quotation marks omitted). Additionally, in order to state a claim for relief consistent with Rule 9, the Plaintiff must plead:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

Rice's fraud allegations are far too conclusory to state a claim for relief. He pleaded that the Defendants disseminated false information about his loan account, but he does not identify or otherwise describe *any* employee at Chase who was responsible for producing such a statement. *See id.* at 1202 (noting that the plaintiff should plead the person responsible for making a false statement). Additionally, the portion of the complaint dedicated to the fraud claim does not identify any particular documents that were the basis of the misrepresentations. In this section, his only allegation as to reliance is that he "proceeded with the execution of the loan." (Doc. 14 at 10 ¶ 57.) Rice failed to allege that any of *Chase's* potential misrepresentations

occurred prior to the loan. Indeed, Chase's involvement apparently began several years *after* the loan was issued in 2007.

Looking elsewhere in the complaint, Rice indicates that he received a notice of default on September 29, 2011, and he apparently received more default notices. However, he did not indicate how he relied to his detriment based on these notices. Instead, Rice pleaded that he continued to make his monthly payments to Chase *in spite* of receiving the default notices and indicated that he continues to live in the house as of the filing of the complaint. In order to state a fraud claim, Rice would need to show that the misrepresentation regarding default "induced him to act in a way that he would not otherwise have acted, that is, that he took a different course of action because of the misrepresentation." *Billy Barnes Enters., Inc. v. Williams*, 982 So. 2d 494, 500 (Ala. 2007) (internal quotation marks omitted). Elsewhere, Rice indicated that Chase published various notices in *The Northport Gazette*. However, he has not indicated how he, in fact, relied on these notices. *See Wyeth, Inc. v. Weeks*, - - - So. 3d - - - -, 2013 WL 135753, at *15–*16 (Ala. Jan. 11, 2013) (noting reliance is an element of any fraud claim even if the plaintiff may in some cases show fraud based on a misrepresentation to a third party). Elsewhere, he has only alluded generally to documents apparently sent to various credit agencies. Rice made no allegations as to

the dates and times of these supposed misrepresentations, and even if the documents could give rise to a fraud claim, Rice has not pleaded sufficient facts to satisfy Rule 9(b). *See Ziemba*, 256 F.3d at 1202. This claim is also due to be dismissed.

In sum, Rice failed to plead sufficient facts to state a claim as to any of these state law tort theories.  The negligence, wantonness, wrongful foreclosure, slander of title, and fraud claims are due to be dismissed.

### iii.    Unjust Enrichment Claim

Rice contends that Chase was also "unjustly enriched by the payment of fees, insurance proceeds and equity in the home." (Doc. 14 at 7 ¶ 36.) "The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." *Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1193 (Ala. 2008) (emphasis removed, internal quotation marks omitted). It does not generally apply where there is an express contract between the parties governing the same subject matter. *Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443, 447 (Ala. 1996).

According to Chase, the mortgage arrangement provides an express agreement regarding these issues. Rice does not mention the unjust enrichment claim in his brief opposing the motion to dismiss, and thus he has abandoned it. *Coal. for the Abolition*

*of Marijuana Prohibition*, 219 F.3d at 1326. However, Rice did argue in a footnote that the Court should not rely on documents attached to the complaint, and Chase did rely on such documents to indicate that an express contract governs these issues.

Even so, the Court need not rely on these documents because the pleaded facts in the complaint indicate the existence of an express contract. Rice pleaded that the mortgage contract contained requirements regarding taxes and insurance, foreclosure processes, and payment procedures. Indeed, he repeatedly claims that Chase failed to adhere to the various requirements of the mortgage agreement. Similarly, he has not pleaded any facts to suggest that unjust enrichment might be needed to fill the gap created by an invalid contract. His only pleading in this regard is the conclusory assertion that "upon information and belief . . . the alleged Assignment of the note and mortgage is defective, void, or otherwise unenforceable as to the security instrument in question in this case." (Doc. 14 at 4 ¶ 19.) This pleaded "fact" merely posits several separate theories that might support a claim *if* there were actual facts to support them. However, this alone is not enough. *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (refusing to accept as true an allegation that, upon information and belief, a state's supply of a lethal drug "is either expired, illegally obtained, or compounded pentobarbital"). Thus, the unjust enrichment claim is also due to be

dismissed.

### C.    Leave to Amend

Throughout his brief opposing the motion to dismiss, Rice requests leave to file an amended complaint if the Court concludes that there are deficiencies in his pleading. Chase contends that the dismissals in this case should be entered with prejudice.

Although leave to amend should generally be freely given, "a district court may consider several factors, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment" in determining whether to allow such leave. *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1241 (11th Cir. 2009) (internal quotation marks omitted). The Court has already addressed the need for an amendment once in this case. Rice filed his first motion to amend only *after* Chase had moved to dismiss the initial complaint, the Court had entered a briefing Order, and Rice himself had moved for (and received) an extension of time to file a responsive brief. His first motion for leave to amend failed to comply with the Court's Uniform Initial Order, and he refiled the motion a second time. The Court

granted that motion on April 15, 2014, nearly two months after removal and well over a month after entry of the briefing Order. Rice now alludes to the need for further amendment, yet again, after the filing of another motion to dismiss and the entry of another briefing Order.

This time around Rice has not explicitly moved for leave to amend but instead has made cursory requests for amendment throughout his brief if the Court finds pleading defects in the amended complaint. Notably, he has not given the Court any basis for why amendment would rectify the defects in the complaint. Instead, Rice's extensive brief contends just the opposite—that he *has* stated a cause of action. Since he has not made a proper motion, the Court can ignore this request. *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (explaining that the Court may even deny leave to amend *sub silentio* when the plaintiffs "requested leave to amend their complaint in a footnote to their brief in opposition to the defendants' motion to dismiss").

Having reviewed the amended complaint when ruling on the motion to dismiss, it is clear that many of the defects in the initial complaint were still present in this complaint. Rice had the benefit of reviewing Chase's initial motion to dismiss *before* amending his complaint, and he has still not corrected multiple significant defects as

to many of his alleged causes of action Thus, the Court will enter these dismissals with prejudice.

## IV.    CONCLUSION

For the reasons stated above, Chase's partial motion to dismiss (Doc. 18) is due to be granted. A separate order consistent with this opinion will be entered.

Done this <u>5th</u> day of <u>August 2014</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
174256